IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ENZO THERAPEUTICS, INC.,

     Plaintiff,

                                     Civil Action No. 2:06cv377

   v.

YEDA RESEARCH AND DEVELOPMENT CO.
OF THE WEIZMANN INSTITUTE OF
SCIENCE

and

JON W. DUDAS
in his official capacity as DIRECTOR of the
U.S. PATENT and TRADEMARK OFFICE,

     Defendants.

## OPINION AND ORDER

     Presently before the Court is a motion by Defendant Jon W. Dudas, in his capacity as

Director of the United States Patent and Trademark Office (the "Director"), to dismiss claims

filed against him on July 3, 2006, by Plaintiff Enzo Therapeutics, Inc. ("Enzo"). The underlying

lawsuit, filed pursuant to 35 U.S.C. § 146, asserts four claims against the Director and Yeda

Research and Development Company ("Yeda") that emerged from an interference proceeding

(the "Interference") conducted by the Board of Patent Appeals and Interference (the "Board").

Count I alleges that the Board abused its discretion by deciding a petition for which it lacks

jurisdiction, and that, consequently, Enzo is entitled to have the Interference decision withdrawn

and the question of priority reexamined by this Court. Count II alleges that the Board's

Interference decision and factual determinations are unsupported by substantial evidence, and

that new findings on the question of priority are warranted on appeal.  Count III alleges the

Director violated the Administrative Procedure Act, 5 U.S.C. § 706, by acting with unreasonable

delay in failing to resolve a petition filed by Enzo on April 12, 2006, appealing the Board's

Interference decision.  Finally, Count IV prays for a writ of mandamus to compel the Director to

decide the same April 12, 2006, petition.  The Director seeks dismissal of Enzo's Complaint for

lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and for

failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).

For the reasons stated herein, the Court **GRANTS** the motion to dismiss Counts I and II

as to the Director, and **GRANTS** the motion to dismiss Counts III and IV in their entirety.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Factual Allegations

Like many claims that arise out of federal administrative hearings, the facts in this case

are grounded in a labyrinth of administrative procedure.  The United States Patent and

Trademark Office ("USPTO") primarily conducts two types of patent proceedings.  The majority

are *ex parte* examinations of patent applications involving a single applicant, and conducted by a

patent examiner who interfaces with the applicant during the application process.  An applicant

dissatisfied with the patent examiner's decision may appeal to the Board.  If the applicant

remains dissatisfied following the Board's review, another appeal may be made by filing a civil

action in the United States Court of Appeals for the Federal Circuit, 35 U.S.C. § 145 (2006), or

in the United States District Court for the District of Columbia, 35 U.S.C. § 145 (2006).  In such

judicial actions, the Director is a necessary party to defend the Board's decision in court.  Id.

The second type of patent proceeding occurs when the USPTO believes two or more parties have invented the same invention at or about the same time.  Such an *inter partes* proceeding is heard before the Board and intended to resolve the question of priority.  Because patents are typically issued on the basis of who created the patent first in time, the resolution of such a hearing is of critical importance to the parties.  See Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 400, 46 S. Ct. 324, 325 (1926) ("[O]ne really must be the first inventor in order to be entitled to a patent.").  A dissatisfied party to an interference may either appeal the Board's decision to the Court of Appeals for the Federal Circuit, 35 U.S.C. § 141 (2006), or file a civil action in any federal district court in which venue is proper, 35 U.S.C. § 146 (2006).

The events leading to the Interference, and this § 146 appeal, began on April 17, 1981, when Enzo filed U.S. Patent Application Serial No. 06/255,215 ("the '215 application") naming Pravinkumer B. Sehgal as the inventor.[1]  Over one year thereafter, on September 28, 1982, Yeda filed U.S. Patent Application Serial No. 06/425,933 ("the '933 application"), naming Michel Revel, et al., as inventors.  On January 27, 1984, the USPTO issued a Final Office Action rejecting the pending claims of Enzo's '215 application, and granted Enzo three months to respond.  Enzo admittedly failed to respond to the Board during this time, and the USPTO abandoned Enzo's '215 application on April 30, 1984.  Nearly three months after such

---

[1] Enzo does not allege that April 17, 1981, is the invention date appropriate to establish priority, but rather that it is the date of application to show that it complied with the one-year publication bar pursuant to 35 U.S.C. § 102(b).  Enzo alleges that the inventor, Sehgal, published the invention in a journal article in November 1980, and "thus invented the subject matter by at least that date." Pl.'s Opp. Mot. Dismiss 2–3.  Although Enzo offers no precise date on which the protein "interferon" was actually invented by Sehgal, such date is immaterial for purposes of resolving the instant motion.

abandonment, on July 27, 1984, Enzo filed a continuation application, U.S. Patent Application Serial No. 06/634,998 ("the '998 application"). For a number of years thereafter, Enzo filed the following additional applications to the USPTO to create a "chain" of patent applications: U.S. Patent Application Serial No. 07/191,517 on May 6, 1988; 07/869,073 on April 10, 1992; 08/300,872 on June 16, 1994; and, finally, 08/479,996 ("the '996 application") on June 7, 1995. Notwithstanding this chain of applications, the Board granted Yeda's '933 application on November 25, 2005, and issued to Yeda U.S. Patent No. 5,468,609 ("the '609 patent").

By Enzo's request, the Board declared the Interference between Enzo's '996 application and Yeda's '609 patent on March 15, 2005, in which Enzo claimed a priority date of April 17, 1981, via the series of applications it had filed with the Board culminating in the '996 application of June 7, 1995. On April 29, 2005, Yeda moved for the Board to deny Enzo's '996 application the benefit of the '215 application for lack of codependency between the two filings. Yeda contended that Enzo's failure to respond to the USPTO's Final Office Action in 1984 caused the '215 application to be abandoned on April 30, 1984, thereby breaking the supposed chain of continuity. As such, the appropriate date establishing Enzo's priority should have been the date of the initial application *after* the 1984 abandonment, the '998 application, filed on July 27, 1984. The Board accepted Yeda's argument and redeclared the Interference on May 18, 2005, without according Enzo the benefit of the '215 application filing date.

On July 1, 2005, Enzo filed a motion pursuant to 37 C.F.R. § 41.121(a)(1) asking the Board to revive the '215 application and to accord Enzo the benefit of the April 17, 1981, filing date on the basis that abandonment in 1984 was unintentional ("Motion for Benefit"). The Motion for Benefit contained an additional petition, styled Petition under 37 C.F.R. § 1.137(b)

4

for Revival of an Application for Patent Abandoned Unintentionally ("Petition to Revive"),

wherein Enzo petitioned for revival of the '215 application based on unintentional abandonment.

Enzo's purpose in filing both the Motion for Benefit and Petition to Revive was to establish

codependency between the '215 application and the '998 application, and therefore obtain a

priority date of April 17, 1981.  The relevant law governing such revivals, 37 C.F.R. § 1.137(b),

permits an applicant to file a petition "to revive an abandoned application" if the delay was

"unintentional."  Moreover, a "grantable petition" pursuant to that provision must also contain:

(1) the required reply unless previously filed, (2) the petition fee, (3) a statement that the entire

delay in filing the required reply was unintentional, and (4) a terminal disclaimer.  37 C.F.R. §

1.137(b).  Enzo's Petition to Revive allegedly contained the first three requisite elements, as well

as a petition to waive the requirement of a terminal disclaimer.

On August 2, 2005, the Board denied Enzo's Motion for Benefit.  This decision by the

Board represents the crux of Enzo's underlying claims against the Director.  On August 16,

2005, Enzo requested a rehearing of the Motion for Benefit ("Request for Rehearing"), pursuant

to 37 C.F.R. § 41.125(c), and filed a petition requesting the Chief Administrative Judge to

instruct the Board to withdraw its denial of Enzo's Motion for Benefit ("Petition to CAJ"),

pursuant to 37 C.F.R. § 41.3.  Both the Request for Rehearing and the Petition to CAJ rested on

Enzo's assertion that the Board lacks jurisdiction to decide the Petition to Revive, which is

vested in the Office of the Deputy Commissioner for Patent Examination Policy ("Deputy

Commissioner"), a different entity within the USPTO.  Enzo further argued that the Board's

disposition of the Motion for Benefit was premature without first obtaining the Deputy

Commissioner's decision regarding the Petition to Revive.

On December 21, 2005, the Board informed Enzo that it would not change its decision denying the Motion for Benefit, and explained that it had only decided the Motion for Benefit—which related to priority and was therefore within the Board's jurisdiction—and not the Petition to Revive—which Enzo had inappropriately filed as an exhibit to the Motion for Benefit. Additionally, the Board dismissed Enzo's Petition to CAJ on the grounds that such a petition was not authorized by the rules governing interference proceedings. In brief, the Board argued that because Enzo's Motion for Benefit raised a question of priority, and because such questions are committed to a panel by statute, the Board's decision was not subject to petition under 37 C.F.R. § 41.3(b)(1). Additionally, the Board stated that the question of which entity within the USPTO is to decide a motion or petition is "procedural," and therefore also not subject to petition under 37 C.F.R. § 41.3(b)(2).

On January 1, 2006, Enzo filed a request for the Board to reconsider the dismissal of the Petition to CAJ ("Request for Reconsideration"), which the Board rejected on January 12, 2006. On April 12, 2006, Enzo filed a Petition Under 37 C.F.R. § 1.183 with the Board requesting that the Director instruct the Board to withdraw its decision on the Motion for Benefit and have the Deputy Commissioner first decide the Petition to Revive ("183 Petition")—the same relief sought by Enzo in the previously filed Petition to CAJ. Having exhausted the administrative remedies available to it, Enzo informed the Administrative Patent Judge two days thereafter, on April 14, 2006, that it would file a request for adverse judgment "solely on the basis of the unpatentability" of its claims in light of the Board's denial of the Motion for Benefit; however, Enzo further indicated that it would seek review of the Board's decision. On April 18, 2006, Enzo filed a Request for Adverse Judgment Pursuant to 37 C.F.R. § 41.127(b), which the Board

6

granted on May 2, 2006, effectively concluding the administrative proceedings regarding the Interference.

### B.        Summary of Claims

Enzo's Complaint names four counts, which may be distilled into two arguments.  The first relates to the Board's denial of Enzo's Motion for Benefit.  With respect to this decision, Enzo first claims (Count I) that the Board abused its discretion by deciding the matter without first giving the Deputy Commissioner an opportunity to resolve the Petition for Revival.  The Board's allegedly premature disposal of the Motion for Benefit constitutes a de facto decision on the Petition for Revival, for which the Board lacks jurisdiction.  To cure the Board's alleged abuse of discretion, Enzo asks that the Board be required to forward the Petition to Revive to the appropriate decisionmaker within the USPTO, the Deputy Commissioner, who should then simply "grant the Petition to Revive because it meets all of the requirements of 37 C.F.R. § 1.137(b)."  Compl. ¶ 126.

Enzo's second argument with respect to the Motion for Benefit (Count II) is that the Board's decision was "unsupported by substantial evidence and represents an abuse of discretion."  Compl. ¶ 129.  This argument goes to the merits of the Board's substantive decision denying Enzo's request to obtain priority from the '215 application filing date of April 17, 1981.  Enzo asserts that the Board's factual determinations regarding the Motion for Benefit and Petition to Revive are unsupported by the evidence and warrant conclusions favorable to Enzo.

The latter two counts alleged by Enzo center on the 183 Petition filed on April 12, 2006, only four days prior to Enzo's request for adverse judgment, requesting the Director to order the Board to forward Enzo's Petition to Revive to the Deputy Commissioner.  The first count

regarding the 183 Petition (Count III) alleges that the Director's failure to decide the 183 Petition "constitutes agency action unlawfully withheld and unreasonably delayed in violation of the Administrative Procedure Act ("APA"). Compl. ¶ 140. Enzo's second argument regarding the 183 Petition (Count IV) prays for relief by writ of mandamus to compel the Director to decide the allegedly outstanding 183 Petition. Issuing the writ, according to Enzo, would necessarily compel a decision on the Petition to Revive by the Deputy Commissioner, which, in turn, would yield a new decision on the Motion for Benefit favorable to Enzo.

### C.       Procedural Posture

Following the litany of administrative hearings, motions, and petitions heard by the Board, and various other entities within the USPTO, Enzo filed a Complaint against Yeda and the Director in this Court on July 3, 2006. On September 22, 2006, the Court granted the Director's Motion for Extension of Time to File Answer, and on October 2, 2006, the Director filed the instant Motion to Dismiss Pursuant to Rule 12(b)(1) and/or to Dismiss Pursuant to Rule 12(b)(6). On October 16, 2006, Enzo filed an opposition to the motion. On that same day, Yeda filed an Answer and Counterclaim against Enzo. The Director filed a rebuttal to Enzo's opposition on October 24, 2006. On October 31, 2006, Enzo moved for leave of Court to file a sur-reply to the Director's rebuttal, which the Court denied on November 20, 2006.

## II.      LEGAL STANDARD

### A.       Rule 12(b)(1): Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of a claim for a court's lack of subject matter jurisdiction, which has been defined as "authority [of a court]

to adjudicate the type of controversy involved in the action." <u>Carlisle v. United States</u>, 517 U.S. 416, 434–35, 116 S. Ct. 1460, 1470 (1996) (Ginsburg, J., concurring) (quoting Restatement (Second) of Judgments § 11 (1982)).  A defense on this basis may be made at any time, and may be raised by a party or sua sponte.  Fed. R. Civ. P. 12(h)(3).  The party asserting subject matter jurisdiction bears the burden of proving its existence, and the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.  <u>Capital One Fin. Corp. v. Drive Fin. Serv., L.P.</u>, 434 F. Supp. 2d 367, 371 (citations omitted).  Granting a party's motion to dismiss on a 12(b)(1) basis does not constitute a judgment on the merits, and therefore has no claim preclusive or res judicata effect.[2]  <u>Williams v. United States</u>, 50 F.3d 299, 304 (4th Cir. 1995).

### B.      Rule 12(b)(6): Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits any defendant to a complaint, counterclaim, or cross-claim to move for dismissal of a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To prevail on this motion, the movant must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45–46, 78 S. Ct. 99, 102 (1957); <u>accord</u> <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 242 (4th Cir. 1999) (holding that granting a 12(b)(6) motion is appropriate where "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief").  Because a 12(b)(6) motion is

---

[2] Compare with dismissal for failure to state a claim under Rule 12(b)(6), which does constitute a judgment on the merits. <u>See</u> <u>infra</u>.

intended to resolve the merits of a claim or applicability of defenses, it should be granted only "in very limited circumstances." Rogers v. Jefferson-Pilot Ins. Co., 883 F.2d 324, 325 (4th Cir. 1969). Moreover, dismissal on this basis constitutes a judgment on the merits, and therefore triggers claim preclusive and res judicata effect. Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3, 101 S. Ct. 2424, 2428 n.3 (1981). The issue in resolving such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974).

In deciding this motion, the court must accept the plaintiff's well-pled factual allegations in the complaint as true, and construe the pleadings, facts, and all reasonable inferences in the light most favorable to the plaintiff. Allbright v. Oliver, 510 U.S. 266, 268, 114 S. Ct. 807, 810 (1994); Ibarra v. United States, 120 F. 3d 472, 474 (4th Cir. 1997). However, a court need not assume the truth of legal conclusions couched as factual allegations. Papasan v. Allain, 478 U.S. 265, 286  106 S. Ct. 2932, 2944 (1986). Courts will not dismiss a plaintiff's claim on a Rule 12(b)(6) motion merely because the complaint requests inappropriate relief or mischaracterizes the relevant legal theories. See Bowers v. Hardwick, 478 U.S. 186, 201, 106 S. Ct. 2841, 2849 (1986) (Blackmun, J., dissenting) ("[A] complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory.") (citations omitted).

III.   ANALYSIS

   A.   **Argument #1: Lack of Subject Matter Jurisdiction**

### 1.    Sovereign Immunity

The Director's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction begins with an assertion of the principle of sovereign immunity, that "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475, 114 S. Ct. 996, 1000 (1994).  Such a waiver of immunity must be clearly expressed, and its absence will preclude a district court's jurisdiction to hear claims asserted against the federal government.  Enzo disputes this initial proposition on the grounds that sovereign immunity is not absolute, but rather subject to two exceptions articulated by a Supreme Court decision in 1949, wherein the Court held that sovereign immunity will not obtain in (1) cases alleging that the officer has acted beyond the powers granted to him by statute, and (2) cases alleging that the statute granting the officers power is itself unconstitutional.  Larson v. Domestic Foerign Commerce Corp., 337 U.S. 682, 689–90, 69 S. Ct. 1457, 1461 (1949).  Enzo relies upon the first Larson exception to the extent that Count I alleges that the "Board failed to follow the [US]PTO's own regulations and acted outside the statutory authority pursuant to 35 U.S.C. § 6." Compl. ¶ 123.

Although the Director concedes the proposition that "[t]here may be, of course, suits for specific relief against officers of the sovereign which are not suits against the sovereign," Larson, 337 U.S. at 689, 69 S. Ct. at 1461, he disputes the application of that exception in this case on two grounds.  First, the narrow exceptions in Larson permit claims against an individual *officer* alleged to have exceeded his authority, not some other party such as, in this case, the Board.  Second, the Larson exceptions do not apply when the relief sought requires more than cessation than the conduct alleged to have exceeded an individual's statutory authority.  As

11

stated in <u>Larson</u>:

> [A] suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign . . . ."

<u>Larson</u>, 337 U.S. at 691 n.11, 69 S. Ct. at 1462 n.11.

On these objections, the Court agrees that the Director is protected by the principle of sovereign immunity.  Enzo does not claim that the *Director* exceeded his authority; rather, it alleges that the *Board* exceeded its authority.  Moreover, the relief demanded by Enzo seeks more than a mere injunction against the Director; it seeks to compel him to take affirmative actions and decide a petition in favor of Enzo with respect to priority.  To the extent that Enzo's Complaint fails to trigger the <u>Larson</u> exceptions, the Director, acting in his official capacity, is entitled to sovereign immunity.  The appropriate question, therefore, is whether the statutory scheme creates a basis on which the Director may be liable to Enzo for the relief sought.

**2.      Counts I & II: 35 U.S.C. § 146**

The Director first seeks to dismiss Enzo's claims on the basis of the statute under which Enzo filed this Interference appeal, 35 U.S.C. § 146.  The statutory provision, in its entirety, provides as follows:

> Any party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences on the interference, may have remedy by civil action, if commenced within such time after such decision, not less than sixty days, as the Director appoints or as provided in section 141 of this title [35 U.S.C. § 141], unless he has appealed to the United States Court of Appeals for the Federal Circuit, and such appeal is pending or has been decided.  In such suits the record in the Patent and Trademark Office shall be admitted on motion of either party upon the terms and conditions as to costs, expenses, and the further cross-examination of the witnesses as the court imposes, without prejudice to the right of the parties to take further testimony.  The testimony and exhibits of the record in the Patent and Trademark Office when admitted shall have the same effect as if originally taken and produced

in the suit.

Such suit may be instituted against the party in interest as shown by the records of the Patent and Trademark Office at the time of the decision complained of, but any party in interest may become a party to the action.  If there be adverse parties residing in a plurality of districts not embraced within the same state, or an adverse party residing in a foreign country, the United States District Court for the District of Columbia shall have jurisdiction and may issue summons against the adverse parties directed to the marshal of any district in which any adverse party resides. Summons against adverse parties residing in foreign countries may be served by publication or otherwise as the court directs.  *The Director shall not be a necessary party but he shall be notified of the filing of the suit by the clerk of the court in which it is filed and shall have the right to intervene.*  Judgment of the court in favor of the right of an applicant to a patent shall authorize the Director to issue such patent on the filing in the Patent and Trademark Office of a certified copy of the judgment and on compliance with the requirements of law.

35 U.S.C. § 146 (2006) (emphasis added).  The Director argues that the statutory text, legislative history, and statutory scheme all justify the conclusion that the Court lacks jurisdiction over the Director in this action.

The statutory text on which the Director relies reads, "[t]he Director shall not be a necessary party but . . . shall have the right to intervene."  This language, the Director argues, explicitly and unequivocally prohibits a party from naming the Director as a party in a civil appeal of a Board's interference decision.  Congress' intent on this matter is further clarified, it is argued, by the legislative history, which states that the particular sentence at issue "is new and prevents such suits from being filed against the Commissioner [now, Director] as a defendant; however, the [Director] has the right to intervene." S. Rep. No. 1979, at 2416 (1952).  Finally, the Director points to other statutory provisions within Title 35 of the United States Code as evidence that "[o]bviously, when Congress intended to permit suit against the Director, it knew how to expressly do so."  Def.'s Mot. Dismiss 11.  For example, 35 U.S.C. § 145 permits a patent applicant dissatisfied with an ex parte Board decision to file suit directly against the

13

Director in the United States District Court for the District of Columbia.  Similarly, 35 U.S.C. § 154(b)(4)(A) authorizes a patent owner dissatisfied with a USPTO decision regarding the length of a patent's term to appeal by filing suit against the Director in the U.S. District Court for the District of Columbia.

To explain the jurisdictional framework of § 146, the Director points to the distinction between *ex parte* proceedings and *inter partes* proceedings.  In proceedings of the former type, a single party interfaces with the USPTO, and Congress will permit the Director to be a named defendant.  By contrast, in proceedings of the latter type, two or more parties compete for rights before the Director, and, so the Director argues, Congress will not permit the Director to be a named defendant.  As Enzo's instant appeal to this Court resulted from an *inter partes* proceeding before the Board, the Director contends that he is not an appropriate party against whom Enzo may file a direct cause of action.  The Director states, "[t]he only affirmative role § 146 creates for the Director is to carry out the judgment as ordered by the district court." Def.'s Mot. Dismiss 11.

Enzo rejects the Director's interpretation of § 146.  Its basis for doing so rests largely on the word "necessary" as it is used in the text to modify the word "party."  Enzo urges the Court to recognize the distinction between a "necessary party," and a "proper party."  As defined by Black's Law Dictionary, a "necessary party" is a person "who must be joined in an action because, *inter alia*, complete relief cannot be given to those already parties without [his or her] joinder." BLACK'S LAW DICTIONARY (5th ed. 1979).  A "proper party," alternatively, is "one who has an interest in the subject-matter of the litigation, which may be conveniently settled therein . . . .  A proper party is one who may be joined in action, but whose nonjoinder will not

14

result in dismissal."  Id.  As Enzo asserts, "[a]lthough all necessary parties must be proper

parties, all proper parties need not be necessary parties."  Pl.'s Opp. Mot. Dismiss 7.

      Certainly, legal dictionaries and common sense vernacular warrant different

understandings of "necessary" and "proper" parties.  On this proposition, the Court agrees with

Enzo.  Had Congress intended to wholly foreclose a dissatisfied party's option to file a claim

against the Director under § 146, it might have drafted the statute to remove any ambiguity

whatsoever.  In other words, quite literally, Congress could have provided that, "The Director

shall not be a party—necessary, proper, or otherwise. . . ."  With that language, it would be

beyond doubt that Enzo would have no basis in attaching the Director to the instant lawsuit.

Alas, that is not as § 146 was drafted.  Rather, Congress injected a healthy dose of ambiguity by

including a simple modifier: "necessary."  A knee-jerk interpretation of such a rhetorical

modification might lead one to conclude that while the Director may not be a *necessary* party, he

may, in fact, be a "proper" party.  With such a conclusion, one might further deduce that the

plain language of § 146 does not immunize the Director from private suit, as the Director so

vehemently asserts.  But while statutes may be oftentimes be construed as their plain meaning

may dictate, this is not always the case, especially where competing evidence warrants

alternative constructions.  See Cass R. Sunstein, Interpreting Statutes in the Regulatory State,

103 Harv. L. Rev. 405 (1989).  This case presents such an instance in which the statute's plain

meaning may not in fact yield the appropriate and correct statutory understanding.  Although the

Court is inclined to agree with Enzo and find that the inclusion of the adjective "necessary" in

§ 146 does not prohibit a dissatisfied party from naming the Director as a defendant in *all* civil

actions filed thereunder, such a conclusion may not be drawn so linearly.  In particular, the

legislative history and judicial precedents interpreting § 146 direct an understanding of the statute that largely conflicts with an otherwise superficial reading of the statute on its plain meaning.

a.    *Legal Precedent*

Legal precedent interpreting § 146 begins with Coe v. Hobart Mfg. Co., 102 F.2d 270 (D.C. Cir. 1939), a decision on which both parties rely to support their respective positions.  In Hobart, the plaintiff filed a federal district court appeal of a Board's interference decision relying largely on 35 U.S.C. § 62, a predecessor to the modern 35 U.S.C. § 146.  In that case, the Director "moved to dismiss the bill as to him on the ground that he was not a *proper* party."  Id. at 271 (emphasis added).  Although the district court denied the motion, the United States Court of Appeals for the District of Columbia reversed the lower court.  In deciding the case, the court made a distinction between the Director as a "proper party," and the Director as a "necessary party."  Supporting the position that the Director was at least a "proper party, if not a necessary party," the plaintiff relied upon judicial precedent holding that *when an interference proceeding is terminated without a decision concerning priority*, rival claimants cannot file suit against each other, "but must sue the [Director] of Patents."  Id. at 271.  The Hobart court found the plaintiff's argument inapposite, however, as the Board, in that case, *had* made a final decision regarding priority.  The act of making such a decision removed any possibility of the Director as a proper party in a district court appeal of the interference proceeding.  The Court further explained that the Director could not be considered "adverse" under the terms of the statute:

> It is contended that the [Director], if not a necessary party, is at least a proper and therefore an adverse party.  But *even if he were a proper party* to a suit to review his award of priority, we think he would not be 'adverse' within the meaning of the statute.  The [Director] has not the slightest interest adverse to plaintiff; whether

plaintiff or defendant gets a patent, the [Director] neither gains nor loses.

Id. at 271.

The reasoning employed by the Hobart court reflects a sound basis for prohibiting a dissatisfied party from naming the Director as a defendant in a § 146 action.  In *inter partes* proceedings, the Director merely acts as a moderator to resolve the issue of priority between two or more adverse and competing claimants.  In *ex parte* proceedings, by contrast, the Director is more akin to an "adverse party," and, as such, there exists a more compelling basis for his presence as a proper, if not necessary, party.  In the instant case now before this Court, not unlike Hobart, the Director affirmatively resolved the issue of priority in the Interference, and denied Enzo the benefit of the '215 application.  Having done so, the Director displaced the possibility of the dissatisfied party—Enzo—naming the Director as a defendant under to § 146.

Enzo nevertheless supports its position with Tomlinson of High Point v. Coe, 123 F.2d 65 (D.C. Cir. 1941).  In Tomlinson, the plaintiff was initially granted the right to register a trademark in November 1936.  Shortly thereafter, another party filed an opposition to the registration, which the Examiner of Interferences granted, and which the Director affirmed.  Thus, Tomlinson did not concern a question of priority resolved by an interference proceeding, but rather concerned an *ex parte* decision by the Patent Office that adversely affected a party previously accorded monopoly rights in a trademark—the disputed Board decision in Tomlinson was not one of *priority*, but rather *registerability*.  Enzo nevertheless relies upon Tomlinson to illustrate the circumstances under which the Director may be joined in litigation as a proper party.  In that case, the Director asked the court to recognize the distinction between *ex parte* and *inter partes* proceedings "based upon the theory that when in an *ex parte* case the Patent Office

17

refuses to grant a patent or to register a trademark, it acts in the public interests; but that in an *inter partes* case it acts in a quasi-judicial capacity and renders a decision adjudicating the rights of opposing parties." Id. at 66.  The Tomlinson court, however, declined to recognize any such distinction, concluding instead that "the Patent Office acts in the public interest in all cases, whether it grants or refuses a patent . . . ."  Id.  The court ultimately ruled that the statute there at issue, 35 U.S.C. § 63, did not preclude the Director as a proper party to the suit.  Thus, in apparent contrast to the Hobart decision, the Tomlinson court found that, at least in some circumstances, a dissatisfied party to an interference may name the Director as a proper, and exclusive, defendant.

Although Tomlinson may appear to contradict the holding of Hobart, decided only two years prior, the cases are in fact distinguishable.  Notably, in Tomlinson, unlike Hobart, the plaintiff was not a "dissatisfied party" appealing an adverse *interference decision*.  Rather, the plaintiff filed suit after the Patent Office first granted the registration of the trademark, but which thereafter denied it following opposition from a competing party.  In short, Tomlinson did not center on the resolution of an interference proceeding: "there was no award by priority between two contesting applicants, but merely a determination by the Patent Office that the trademark was nonregisterable."  Id. at 68.  To this extent, the Tomlinson decision does not upset the principle articulated in Hobart that once the Board renders a decision as to priority between two competing claimants, the dissatisfied party may not file suit directly against the Director.  Moreover, Tomlinson fits neatly within the province of Alexandrine v. Coe, 71 F.2d 348 (D.C. Cir. 1934), in which the D.C. Circuit held that when the Patent Office decides to cancel one party's trademark after hearings initiated by a rival, the aggrieved party may file suit against the

18

Director without joining the rival.

Tomlinson may also be distinguished from the instant case because the statute there at issue—35 U.S.C. § 63—has since been fundamentally altered to such an extent as to preserve the critical reasoning of that opinion.  The court in Tomlinson was particularly concerned with the judiciary's ability to resolve patent disputes with relevant input from the essential participants.  Critical to resolving most patent disputes was, and is, the participation of the Director.  As such, the court directed that the Director be retained as a party to the suit in order to preserve his "opportunity" to present pertinent evidence at trial.  The statute now at issue—35 U.S.C. § 146—explicitly preserves this "opportunity" by granting the Director the "right to intervene" at his own discretion.  Such intervention, absent in the statute at issue in Tomlinson, no doubt serves to protect the public interest, a responsibility with which the Director is so charged, as clearly articulated by the court in Tomlinson.  Moreover, unlike the statute at issue in Tomlinson which "sa[id] nothing about the propriety of suing the [Director], even when there is an opposing party," Tomlinson, 123 F.2d at 68, § 146 explicitly defines the Director's role in any suit filed thereunder: specifically, he "shall be notified of the filing of the suit," and "shall have the right to intervene."  35 U.S.C. § 146 (2006).  To the extent Tomlinson may be distinguished from Hobart and the modern content of § 146 on these grounds, the Court **FINDS** that the authority of Tomlinson is less instrumental, if not wholly inapposite, to the disposition of the instant motion.

The modern understanding of § 146 may be best illustrated in the relatively recent decision of Case v. Comm'r of Patents & Trademarks, 485 F. Supp. 1013 (D. Ma. 1980).  In Case, the plaintiff, a dissatisfied party to an interference decision made by the Board, filed suit against the competing-claim inventor, as well as the Director.  The Director moved to dismiss

19

the action on the ground that he was an "improper party." Relying both on the text of § 146 and

the decision in Hobart, the Court granted the Director's motion to dismiss and concluded that

"the [Director] of Patents is not an adverse party within this section [35 U.S.C. § 146]." Id. at

1015.

b.   <em>Legislative History</em>

The legislative history to 35 U.S.C. § 146 provides additional, albeit slight, support for

the Director's position. Such history was sufficiently summarized in Ellis-Foster Co. v. Union

Carbide & Carbon Corp., 284 F.2d 917, 925 (3rd Cir. 1960), cert. denied 365 U.S. 813, 81 S. Ct.

693 (1961), as follows:

> [T]he language changes in Section 146 over old Section 63 are very nearly neutral. The most important one, relative to the issues at bar lies in the addition of the fourth sentence of the second paragraph to Section 146. This provides: "The [Director] shall not be a necessary party but he shall be notified of the filing of the suit by the clerk of the court in which it is filed and shall have the right to intervene." The legislative history of the sentence quoted is very brief. S. Rep. No. 1979, U.S. Code Cong. & Ad. News, 82nd Cong. 2d Sess., p. 2416 (1952), states: "The fourth sentence is new and prevents such suits from being filed against the [Director] as a defendant; however, the [Director] has the right to intervene."

Id. Thus, the history of § 146 reflects Congress' clear purpose in adding the sentence now in

dispute: to prevent a dissatisfied party to an interference from filing suit against the Director as a

defendant. In other words, § 146 was amended in 1952 to foreclose the filing of lawsuits

precisely like the suit now asserted by Enzo against the Director.

In view of the foregoing judicial precedent, legislative history, and equivocal statutory

text, the Court **FINDS** that a dissatisfied party to an interference may not initiate a lawsuit

naming the Director as a defendant, pursuant to 35 U.S.C. § 146, and that said statute is not a

proper vehicle to challenge the Director's resolutions of such <em>inter partes</em> proceedings. The

20

Court agrees with the Director that a meaningful distinction exists between *ex parte* hearings and

*inter partes* hearings.  A reputable treatise accurately summarizes the law on this issue:

> The question of who must be joined as defendants in an action involving the issuance
> of a patent or trademark turns on whether the Patent and Trademark Office
> proceeding was ex parte or inter partes. . . .  The [Director] is not a necessary party
> in this instance, and although the [Director] has been held to be a proper party, the
> Patent Act indicates that *the [Director] may become a party only if he chooses to
> intervene*.  In an action brought after an inter partes denial of a trademark, the
> [Director] is not a proper party, although he is required to be notified of the
> proceeding and has a right to intervene.

7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, FEDERAL PRACTICE AND

PROCEDURE § 1614 (3d ed. 2001) (emphasis added) (footnotes omitted).

> For these reasons, the Court hereby **GRANTS** the Director's motion and **DISMISSES**

Counts I and II of Enzo's Complaint against the Director for lack of subject matter jurisdiction.

Although a § 146 action before the district court constitutes an appeal of the Board's decision, it

is conducted as a trial *de novo*, and represents an extension of Patent Office proceedings.  Radio

Corps. of Am. v. Philco Corp., 201 F. Supp. 135, 143 & n.45a (E.D. Pa. 1961).  The Court holds

only that § 146 is not an appropriate vehicle by which Enzo may join the Director as a defendant.

For such relief, alternative administrative and statutory procedures may have been available.

### 3.      Scope of § 146 Review: Ancillary Issues

> In addition to seeking dismissal on the basis of 35 U.S.C. § 146, the Director asserts that

he may not be a party to any dispute regarding ancillary issues underlying the ultimate decision

of priority in the Interference.  Without citation or support, the Director simply states that, "Just

as there is no jurisdiction over the Director for the final decision on priority, there is no

jurisdiction over the Director on an interlocutory decision that led to that final decision."  Def.'s

Mot. Dismiss 13.  Because the Court has already granted the Director's motion to dismiss for

lack of subject matter jurisdiction on the basis of § 146, it need not resolve the Director's

subsidiary arguments for dismissal.  However, the issue presented by the Director—whether the

Court can retain jurisdiction over the Director on matters alleged to be ancillary or subsidiary to

the final decision of priority—is of particular interest to the extent that it will frame the scope of

Enzo's § 146 appeal.

The Director's reasoning on this basis is two-pronged.  First, and most simply, the

Director contends that the Court cannot decide, and Enzo cannot allege, a claim against the

Director on the basis of a petition that Enzo failed to appropriately file with the USPTO during

the Interference.  Although Enzo filed its Motion for Benefit directly to the Board, the Petition

for Review—which constitutes the heart of Enzo's appeal—was a mere exhibit attached thereto.

The Director contends that "[t]here are certain procedures for filing petitions, including

submitting the petition to the proper location," and that "the exhibit petition form itself makes

plain on its face [that] filing requires sending the petition to the Office of Petitions at a particular

address."  Def.'s Rebuttal 10.  As of September 2006, this form, PTO/SB/64,[3] entitled "Petition

for Revival of an Application for Patent Abandoned Unintentionally Under 37 C.F.R. 1.137(b),"

indicated on its face that such petition was to be mailed to "Attention: Office of Petitions,

Commissioner for Patents, P.O. Box 1450, Alexandria, VA, 22313-1450."  This same direction

and address is provided in the Manual of Patent Examination Procedure provision on which

Enzo now relies, M.P.E.P. §1002.02(b).  Rather than mail the completed Petition to Revive to

this address, however, Enzo filed it as an appendix to the Motion for Benefit.  To Enzo's

---

[3] Although neither party submitted Form PTO/SB/64 to the Court, it is readily available
on the Internet.  See U.S. Patent and Trademark Office, Form PTO/SB/64, available at
http://www.uspto.gov/web/forms/sb0064_fill.pdf.

subsequent chagrin, the Board saw fit to deny the Motion for Benefit without ever advancing the

Petition to Revive to the Office of Petition, nor to the party Enzo alleges to be the appropriate

USPTO entity responsible for resolving such petitions, the Deputy Commissioner.

Consequently, Enzo implores this Court to compel the Director to require the Board to forward

the allegedly undecided Petition to Revive to the Deputy Commissioner for appropriate

procedural resolution.  Why Enzo failed to file the Petition to Revive with the Office of Patents

remains a mystery to this Court.  Perhaps "the Petition to Revive was submitted with the

understanding that [it] would be properly forwarded for a decision in accordance with the

USPTO's rules and the Board's statutorily limited authority," as Enzo has so stated.  Pl.'s Opp.

Mot. Dismiss 13–14.  Or perhaps Enzo's explanation constitutes a Monday-Morning Hail Mary

heaved by Enzo to avoid the perception that it made a procedural fumble.  Regardless, the

Director now contends that this apparent filing mistake warrants dismissal of Enzo's Complaint.

The Director's second argument relies again upon the distinction between *ex parte*

proceedings and *inter partes* proceedings.  In short, the Director disputes the Court's jurisdiction

to review petitions filed by a patent applicant in an *inter partes* proceeding, such as the Petition

to Revive now in dispute.  Although the Director concedes that the Court has reviewed such

petitions made during *ex parte* proceedings, see, e.g., Star Fruits S.NC. v. United States, 280 F.

Supp. 2d 512 (E.D. Va. 2003) (reviewing decision on petition under 37 C.F.R. § 1.181), aff'd,

393 F.3d 1277 (Fed. Cir. 2005), he argues that the Court has not, and cannot, resolve such

petitions made during *inter partes* proceedings.  Moreover, the Director claims that the disputed

Petition to Revive was not even decided, and that the Court therefore has no basis to review such

non-decision.

The question presented by the Director's alternative objections to the Court's jurisdiction warrants consideration, not to determine whether the Director is a proper party (an issue which has already been decided), but so that the parties to this lawsuit may understand the purpose of a § 146 appeal, and the Court's role therein.  Pursuant to 35 U.S.C. § 135, an interference proceeding is designed to resolve "questions of priority."  But that is not all: "While the primary question in interference proceedings is the determination of the priority of invention, other pertinent questions may be incidentally involved."  Smith v. Carter Carburetor Corp., 130 F.2d 555, 557 (3rd Cir. 1942).  Thus, the question of scope raised by this motion to dismiss is whether the resolution of Enzo's Petition to Revive raises *either* a "question of priority" or one that is "incidentally involved."

A similar issue was raised in Ellis-Foster Co., in which the Court held that the ancillary question there at issue "goes to the very foundation of an interference" because its resolution would have determined the outcome of the Board's decision of priority.  Ellis-Foster Co., 284 F.2d at 922.  This case is no different.  Whether Enzo will be afforded the priority date of April 17, 1981, from the '215 application hinges on the resolution of the Petition to Revive.  Were this Court precluded from reviewing such petition, it would remain undecided, as would be the question of unintentional abandonment, and, as a consequence, the question of priority.  Such a conclusion would surely handicap the plain intent of Congress in creating such a right of appeal for dissatisfied parties to an interference.

In light of the foregoing, the Court will consider all questions of priority, as well as those that are ancillary thereto, including the Petition to Revive, in reviewing the Board's interference decision, as authorized by 35 U.S.C. § 146.  Although the Director shall not be a necessary party

24

under any circumstances, and shall not be a proper party unless he so chooses to intervene, the Court expresses doubt as to whether it would otherwise lack jurisdiction over the Director on the basis that the Petition to Revive was an improperly filed and otherwise unresolved ancillary issue.

**B.      Argument #2: Failure to State a Claim**

**1.      Count III: 183 Petition as Moot**

In addition to seeking review and withdrawal of the Board's Interference decision regarding priority, the Director seeks to dismiss Count III of the Complaint, in which Enzo requests the Court to compel the Director to decide the 183 Petition.  The Director challenges this claim on the ground that the 183 Petition became moot when Enzo requested adverse judgment from the Board on April 18, 2006, which the Board subsequently granted on May 2, 2006, pursuant to 37 C.F.R. § 41.127(b).  Enzo rejects this challenge, and avers that the Director's failure to resolve the 183 Petition constitutes an "unreasonable delay" for which an equitable remedy is available.

The Court agrees with the Director.  Enzo's Complaint alleges that the "Director's failure to timely decide the 183 Petition is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, not in accordance with law and without observance of procedure required by law, all in violation of the APA."  Compl. ¶ 142.  In responding to the Director's motion to dismiss, however, Enzo shifts focus from the 183 Petition, and frames the Count rather as an attempt to compel the Director to decide the Petition to Revive.  But Enzo has offered no compelling reason why the 183 Petition was not rendered moot by its calculated decision to file a cause of action under § 146.  If Enzo in fact wishes to have the Court address the concerns raised

by the Petition to Revive—that is, the question of priority—then it should allege a count in the Complaint stating as much.  And so it has.  Count I alleges that "the Board should be required to forward the Petition to Revive to the Office of the Deputy Commissioner for Patent Examination Policy for a timely decision on the merits."  Compl. ¶ 125.  Thus, it is Count I in which Enzo adequately requests judicial inquiry into the Petition to Revive.

Count III, by contrast, implicates a late-day petition that became moot the moment the Board granted Enzo's request for adverse judgment and appeal was made under § 146: "[U]pon the filing of a notice of appeal from an appealable decision . . . with the [Director], the subject matter of the appeal is transferred to this court, and that thereafter until the appeal has been disposed of by us the tribunals of the Patent Office have no jurisdiction to grant a motion for reconsideration of the decision appealed from, *even though such motion was made before the filing of such notice of appeal*."  In re Graves, 69 F.3d 1147, 1149 (Fed. Cir. 1995) (quoting In re Allen, 115 F.2d 936, 941 (C.C.P.A. 1940)) (emphasis added).  Additionally, when a dissatisfied party files a § 146 action to review a portion of the Board's decision regarding priority, the district court retains jurisdiction of the *entire* decision.  Boseki v. Owens-Corning Fiberglass Corp., 589 F. Supp. 527, 530 (D. Del. 1984).

Enzo's assertion that "[t]he Board's de facto denial of the Petition to Revive is not an appealable decision" underestimates the authority of this Court under § 146, which grants the Court power to review all questions of priority and any ancillary questions that are "incidentally related" thereto.  Moreover, "consideration of issues ancillary to priority is limited to those issues which are raised and decided before the Board in the interference proceedings."  Boseki, 589 F. Supp. 527, at 532 (D. Del. 1984).  To the extent that this Court has not dismissed Counts I

and II with respect to Yeda, Enzo has made a sufficient legal claim for judicial review of the issues contemplated by and in the Petition to Revive.

In light of the foregoing, the Court **GRANTS** the Director's motion and **DISMISSES** Count III of Enzo's Complaint.

### 2.     Count IV: Writ of Mandamus

The final count of Enzo's Complaint seeks relief by writ of mandamus ordering the Director to compel a decision on the allegedly outstanding 183 Petition and "consequently a timely decision on the Petition to Revive by the Office of the Deputy Commissioner for Patent Examination Policy to allow further administrative proceedings to determine priority between the parties to the Interference."  Compl. ¶ 155.  The Court finds this claim cannot be maintained because Enzo has not adequately alleged that no other remedy is available.

The Court possesses jurisdiction over proper pleadings requesting the relief of mandamus: "The Supreme Court and all courts established by Acts of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651 (2006).  Additionally, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff."  28 U.S.C. § 1361 (2006).  Thus, this Court is not without jurisdiction to consider the plaintiff's prayer for writ of mandamus.  However, Enzo has failed to allege that no other adequate remedy is available, which is required of a party seeking relief by writ of mandamus.

Both Enzo and the Director agree that a party may invoke the remedy of mandamus "by proving the co-existence of three elements: (1) the petitioner has shown a clear right to the relief

sought; (2) the respondent has a clear duty to do the particular act requested by the petitioner; and (3) no other adequate remedy is available." Estate of Michael ex rel. Michael v. Lullo, 173 F.3d 503, 512–13 (4th Cir. 1999) (quotations and citations omitted).  In the instant case, Enzo fails this third prong, and instead alleges that it "*will have* no adequate alternative relief *if* the relief sought under Counts I, II, or III is not granted."  Compl. ¶ 152 (emphasis added).  The allegation is not that Enzo is without remedy; it is that Enzo may be without remedy at some future time, but only if the Court does not grant relief provided by § 146.  It is well established that, "[o]rdinarily mandamus may not be resorted to as a mode of review where a statutorily method of appeal has been prescribed."  Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 27–28, 63 S. Ct. 938, 942–43 (1943).  Such a statutory method of appeal has been prescribed in this case by 35 U.S.C. §§ 141 and 146.  Enzo, having chose § 146 as the vehicle to appeal the Board's interference decision, may not also seek a remedy by writ of mandamus.  To allow such a claim would frustrate the very nature and intent of the extraordinary remedy provided by mandamus.  Because this ground for dismissing the plea for writ is sufficient, the Court declines to resolve any issue regarding the existence or scope of any alleged duty the Director may owe to Enzo.

In light of these considerations, the Court **GRANTS** the Director's motion on this claim and hereby **DISMISSES** Count IV.  Enzo is afforded adequate relief by the *de novo* appeal of the Interference created by 35 U.S.C. § 146.  As that statute so provides, "Judgment of the court in favor of the right of an applicant to a patent shall authorize the Director to issue such patent on the filing in the Patent and Trademark Office of a certified copy of the judgment and on compliance with the requirements of law."  35 U.S.C. § 146 (2006).  Moreover, the Court may stay the § 146 appeal and compel such further proceedings in and by the USPTO, and its

officers, as the Court deems appropriate at law.  See Phillips Petroleum Co. v. Brenner, 383 F.2d

514, 518–19 (D.C. Cir. 1967) ("[C]ourts reviewing arbitrary Patent Office final action will

generally be able to fashion remedies they deem needful to correct injustices.").

The Clerk of the Court is **DIRECTED** to forward copies of this Memorandum Opinion

and Order to counsel of record for all parties.

**IT IS SO ORDERED.**


_____/s/_____
Robert G. Doumar
UNITED STATES DISTRICT JUDGE


December 6, 2006
Norfolk, Virginia