IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ENZO THERAPEUTICS, INC.,

       Plaintiff,

                                       Civil Action No. 2:06cv377

  v.

YEDA RESEARCH AND DEVELOPMENT CO.
OF THE WEIZMANN INSTITUTE OF
SCIENCE

       Defendant.

## OPINION AND ORDER

Now before the Court is a Motion for Summary Judgment by which Plaintiff Enzo

Therapeutics, Inc. ("Enzo"), seeks early resolution of an Interference appeal filed pursuant to 35

U.S.C. § 146. Defendant Yeda Research and Development Co. ("Yeda") objects to summary

judgment and maintains that material facts remain in dispute that foreclose the premature

termination or remand of this case to the Board of Patent Appeals and Interferences ("Board") at

the United States Patent and Trademark Office ("PTO"). For the reasons stated herein, the Court

**GRANTS** Enzo's motion, **REMANDS** this matter to the Board so that Enzo may have an

opportunity to submit new evidence on the question of unintentional abandonment under 37

C.F.R. § 1.137(b)(3), as required by principles of equity and due process. Additional

proceedings may follow thereafter, as necessary, consistent with this Opinion.

## I. FACTS, LEGAL LANDSCAPE, & PROCEDURAL POSTURE

### A. Factual Background & Legal Landscape

As this Court stated in its prior Order of December 6, 2006, "the facts in this case are

1

grounded in a labyrinth of administrative procedure." Enzo Therapeutics, Inc. v. Yeda Research & Dev. Co., No. 2:06CV377 (RGD), 2006 U.S. Dist. LEXIS 88497 at *3 (E.D. Va. Dec. 6, 2006). To fully understand the terrain on which the events of this case transpired, one must be well-schooled on the landscape of administrative procedure. Thus is the minefield of the bureaucratic state. However, the legal questions presented by this case, as well as the essential facts, are not complex. The following facts and applicable legal provisions are not in dispute.

### 1.   The '215 Application

The saga begins on April 17, 1981, when Enzo filed U.S. Patent Application Serial Number 06/255,215 ("the '215 application") with the United States Patent and Trademark Office ("PTO").[1] Over one year thereafter, on September 28, 1982, Yeda filed U.S. Patent Application Serial Number 06/425,933 ("the '933 application") with the PTO.[2] For nearly fifteen months thereafter, all was quiet on the bureaucratic frontier.

On January 7, 1984, the PTO issued a Final Agency Action rejecting Enzo's pending '215 application. To continue the pendency of a rejected application, a patent applicant must file a response to the PTO, typically within six (6) months: "Unless the applicant is notified in writing that a reply is required in less than six months, a maximum period of six months is allowed." 37 C.F.R. § 1.134 (2006). However, as § 1.134 authorizes, the PTO shortened the statutory period for Enzo's reply to three (3) months. The decision to reduce the response time, which has played such a fundamental role in this case, was articulated by the PTO in unequivocal terms:

---

[1] The '215 application named Pravinkumer B. Sehgal as the inventor.

[2] The '933 application named Michel Revel, et al., as inventors.

> A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL
> ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS
> ACTION.  IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO
> MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND THE
> ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE
> THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE
> SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE
> ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT
> TO 37 CFR 1.136(a) WILL BE CALCULATED FROM THE MAILING DATE OF
> THE ADVISORY ACTION.  IN NO EVENT WILL THE STATUTORY PERIOD
> FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM THE DATE OF
> THIS FINAL ACTION.

Compl. Ex. 6 at 10.  Thus, Enzo was required to respond to the PTO's notice of rejection, if at

all, by April 27, 1984; without such response, the '215 application would be deemed abandoned

as of 12:00 a.m. on April 28, 1984, as provided in 35 U.S.C. § 133:

> Upon failure of the applicant to prosecute the application within six months after any
> action therein, of which notice has been given or mailed to the applicant, or within
> such shorter time, not less than thirty days, as fixed by the Director in such action,
> the application shall be regarded as abandoned by the parties thereto . . . .

35 U.S.C. § 133 (emphasis added); see also 37 C.F.R. § 1.135 (2006) ("If an applicant of a patent

application fails to reply within the time period provided under § 1.134 and § 1.136, the

application will become abandoned unless an Office action indicates otherwise.").

However severe one may perceive the law requiring an applicant to timely file a response

to the PTO, the bureaucratic state is not so Draconian, and an applicant may request an extension

of time to reply:

> If an applicant is required to reply within a nonstatutory or shortened statutory time
> period, applicant may extend the time period for reply up to the earlier of the
> expiration of any maximum period set by statute or five months after the time period
> set for reply, if a petition for an extension of time and the fee set in § 1.17(a) are
> filed . . . .

37 C.F.R. § 1.136(a)(1) (2006) (emphasis added).  The PTO expressly informed Enzo of this

opportunity to extend the response time as follows:

> Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a). The practice of automatically extending the shortened statutory period an additional month upon the filing of a timely response to a final rejection has been discontinued by the Office.

Compl. Ex. 6 at 9–10. Thus, while Enzo could have filed for an extension of time under § 1.136, it did not, and the '215 application was abandoned for Enzo's failure to timely respond as of 12:00 a.m. on April 28, 1984.

Despite its failure to respond or petition for additional time under § 1.136, Enzo had not lost the war. Where an applicant is deemed to have abandoned an application, he or she may petition the PTO to revive the abandoned application if the delay was "unavoidable" or "unintentional." The former exception finds authority in 35 U.S.C. § 133, which provides that an application failing to meet the imposed deadlines will be "regarded as abandoned," "unless it be shown to the satisfaction of the Director that such delay was <u>unavoidable</u>." 35 U.S.C. § 133 (emphasis added). The latter exception finds authority in 35 U.S.C. § 41(a)(7), which specifies the filing fee for a "petition for the revival of an <u>unintentionally</u> abandoned application for a patent . . . ." 35 U.S.C. § 41(a)(7) (emphasis added).[3] Both exceptions have been adopted at 37 C.F.R. § 1.137(a) and (b). The latter provision pertaining to unintentional delay is most relevant to this case, and provides as follows:

> (b)    If the delay in reply by applicant or patent owner was unintentional, a petition may be filed pursuant to this paragraph to revive an abandoned

---

[3] "The legislative history of Public Law 97-247, § 3, 96 Stat. 317 (1982), reveals that the purpose of 35 U.S.C. 41(a)(7) is to permit the Office to have more discretion than in 35 U.S.C. 133 . . . to revive abandoned applications in appropriate circumstances." U.S. Patent & Trademark Office, MANUAL OF PATENT EXAMINING PROCEDURE § 71103(c)(II)(C)(1) (8th ed. Aug. 2006) (hereinafter cited as "M.P.E.P.")

application . . . .   A grantable petition pursuant to this paragraph must be accompanied by:

(1)     The reply required to the outstanding Office action or notice, unless previously filed;

(2)     The petition fee as set forth in § 1.17(m);

(3)     A statement that the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to this paragraph was unintentional.   The Director may require additional information where there is a question whether the delay was unintentional; and

(4)     Any terminal disclaimer (and fee as set forth in § 1.20(d)) required pursuant to paragraph (d) of this section.

37 C.F.R. § 1.137(b) (2006).  Although Enzo possessed this right to petition the PTO to revive

the abandoned '215 application in April 1984, it did not exercise it until years later.

## 2.     The "Continuation" Application (The '998 Application)

On July 27, 1984—three months *after* the shortened deadline to file a response to the

Final Agency Action (but just *before* the default six-month deadline not applicable in this

case)—Enzo filed what purported to be a continuation application, U.S. Patent Application

Serial Number 06/634,998 ("the '998 application"), to the PTO.  "A continuation [application] is

a second application for the same invention claimed in a prior nonprovisional application and

filed before the original prior application becomes abandoned or patented."  M.P.E.P. § 201.07;

see also 37 C.F.R. § 1.53(b) (2006) (authorizing the filing of continuation application).

To the extent that Enzo's '215 application may have been abandoned on April 28, 1984,

the '998 application did not constitute a true "continuation application."  However, but for

Enzo's prior abandonment of the '215 application, the '998 application complied with the

applicable law and contained Enzo's express request that the PTO "[a]bandon said prior ['215

application as of the filing date accorded this ['998] application."  Compl. Ex. 11 ¶ 11.

Notwithstanding the lateness of Enzo's '998 application, the PTO's internal paperwork reflected

5

a mistaken understanding that it constituted a continuation of the '215 application, as evidenced

by the file wrapper that the PTO associated with Enzo's file.  On the surface, a reasonable person

overlooking Enzo's prior abandonment of the '215 application could have mistakenly believed

that the '998 application was an effective continuation application under § 1.53.  As of July 27,

1984, the '998 application superficially appeared to possess copendency with the '215

application.  If perception was reality, this would have effectively accorded Enzo's '998

application a filing date of April 17, 1981.

Without objection, alarm, or other cause for concern, Enzo continued to file

"continuation applications" to the PTO, and created a "chain" purporting to relate back to the

'215 application of April 17, 1981: U.S. Patent Application Serial No. 07/191,517 on May 6,

<u>1988</u>; 07/869,073 on April 10, <u>1992</u>; 08/300,872 on June 16, <u>1994</u>; and, finally, 08/479,996 ("the

'996 application") on June 7, <u>1995</u>.  After Enzo filed the continuation application of June 16,

1994 (08/300,872), the PTO sent Enzo a filing receipt that acknowledged Enzo's patent

application, and listed the "CONTINUATION DATA AS CLAIMED BY APPLICANT," which

included each of Enzo's applications since and including the '215 application filed on April 17,

1981.  Thus, one reading the PTO's receipt would objectively understand that it was a

continuation application receipt, and not an abandonment.

### 3.    The Interference

Notwithstanding Enzo's chain of applications, the Board granted Yeda's '933 application

on November 21, 1995, and issued to Yeda U.S. Patent No. 5,468,609 ("the '609 patent").  Thus,

a conflict emerged: Both Enzo and Yeda claimed priority and rights to the subject matter of their

respective patent applications, a protein called "interferon."  The record before this Court

contains no information regarding the PTO decision to grant Yeda the '609 patent while Enzo's conflicting application was apparently pending.

The PTO mechanism to resolve such disputes is known as an interference.  Authorized by 35 U.S.C. § 135, a "patent interference is a proceeding to determine which of two or more inventors claiming the same invention is the first inventor and is declared by the patent Office if it is suspected that a patent application under consideration would interfere with a pending application of another party or an expired patent."  Godtfredsen v. Banner, 503 F. Supp. 642, 643 (D.D.C. 1980).  Thus, on March 15, 2005, by Enzo's request, the PTO declared an Interference between Enzo's '996 application and Yeda's '609 patent to determine whether Enzo or Yeda was entitled to the patent subject matter in dispute.

Upon the initial declaration of the Interference, the PTO accorded Enzo's '996 continuation application the benefit of the earlier-in-time '215 application.  Consequently, Enzo was entitled to a priority date of no later than April 17, 1981.  As noted, however, an application may be a "continuation" under 37 C.F.R. § 1.53(b) only if the prior application is pending at the time of the continuation filing—the two adjacent applications must be pending together, or, more technically, possess "copendency."  On this principle, Yeda moved the Board on April 29, 2005, to deny Enzo's '996 application the benefit of the '215 application (and thus, the filing date of April 17, 1981) for lack of copendency.  Yeda contended that Enzo's failure to respond to the PTO's Final Agency Action by April 27, 1984, constituted abandonment of the '215 application.  As such, Yeda reasoned, the appropriate priority date for Enzo's application was the filing date of the '998 application, July 27, 1984.  The Board, persuaded by Yeda's motion, redeclared the Interference on May 18, 2005, without according Enzo the benefit of the '215 application.

7

Compl. Ex. 8.

### 4.    Appeals, Petitions, and Motions

Notwithstanding the seemingly fatal blow of the redeclaration, Enzo persevered by

unloading a magazine of motions and petitions to resuscitate the abandoned '215 application.

On July 1, 2005, Enzo submitted two filings critical to this case.  First is the "Substantive Motion

Pursuant to 37 C.F.R. § 41.121(a)(1) to be Granted Benefit of an Earlier Application" ("Motion

for Benefit"),[4] wherein Enzo requested that the Board revive the '215 application and accord

Enzo the April 17, 1981, filing date on the ground that Enzo's abandonment in 1984 was

unintentional.  Compl. Ex. 9.  The Motion for Benefit relied almost exclusively on Enzo's

second filing, a "Petition for Revival of an Application for Patent Abandoned Unintentionally

Under 37 C.F.R. § 1.137(b)" ("Petition to Revive"), which Enzo submitted via a standard boiler-

plate form provided by the PTO (Form PTO/SB/64).[5]  Compl. Ex. 10.  Although Form

PTO/SB/64 explicitly indicates that it is to be mailed upon completion to "Attention: Office of

Petitions, Commissioner for Patents, P.O. Box 1450, Alexandria, VA, 22313-1450," Enzo did

not mail it accordingly.  Rather, somewhat puzzlingly, Enzo submitted the Petition to Revive to

the Board as an attachment to be considered with the Motion for Benefit.[6]  This is puzzling to the

extent that the Petition to Revive constituted the centerpiece of Enzo's attempt to revive the '215

---

[4] Section 41.121(a)(1) of Title 37 to the Code of Federal Regulations provides that "to the extent the Board authorizes, a party may file a motion (i) To redefine the scope of the contested case, (ii) To change benefit accorded for the contested subject matter, or (iii) For judgment in the contested case."  37 C.F.R. § 41.121(a)(1).

[5] A blank Form PTO/SB/64 is available online at http://www.uspto.gov/web/forms/sb0064_fill.pdf; see also M.P.E.P. § 711.03(c).

[6] Without citing any authority, Enzo now claims that the rules governing Interference proceedings precluded it from directing the Petition to Revive to the Office of Petitions.

application.  As a matter of fact, the Motion for Benefit was drafted not to stand alone on its own merit, but rather as a vehicle by which Enzo could file the more essential (and common) Petition to Revive under § 1.137(b).[7]

Despite directing the Petition to Revive to a seemingly improper party, Enzo alleges that it satisfied the requirements for filing such petitions, 37 C.F.R. § 1.137(b).  Among the requirements was Enzo's statement, made to satisfy § 1.137(b)(3), that "The entire delay in filing the required reply from the due date for the required reply until the filing of a grantable petition under 37 CFR 1.137(b) was unintentional."  Compl. Ex. 10 at 2; 37 C.F.R. § 1.137(b)(3).  Accompanying this statement on Form PTO/SB/64, however, was the following caveat: "NOTE: The United States Patent and Trademark Office may require additional information if there is a question as to whether either the abandonment or the delay in filing a petition under 37 CFR 1.137(b) was unintentional . . . ."  Id.  To satisfy § 1.137(b)(4), Enzo filed a "Petition Under 37 C.F.R. § 1.183 to Request Waiver of the Requirement for Filing a Terminal Disclaimer" ("Petition for Waiver").[8]  Enzo's lead counsel, Robert M. Schulman, signed both the Petition to

---

[7] The introductory sentence of the Motion for Benefit is instructive on Enzo's exclusive reliance upon the Petition to Revive:

"[Enzo] respectfully requests that it be granted the benefit of U.S. Patent Application Serial Number 06/255,215 filed April 17, 1981, in view of the attached PETITION UNDER 37 C.F.R. § 1.137(b) FOR REVIVAL OF AN APPLICATION FOR PATENT ABANDONED UNINTENTIONALLY . . . ."

Compl. Ex. 9 at 2.

[8] Section 1.183 of Title 37 of the Code of Federal Regulations provides as follows:

In an extraordinary situation, when justice requires, any requirement of the regulations in this part which is not a requirement of the statues may be suspended or waived by the Director or the Director's designee, *sua sponte*, or on petition of the

9

Revive and Petition for Waiver.

### 5.    The Board's Decision(s)

Enzo's arsenal of administrative petitions had little effect on the bureaucratic fortress

occupied by the Board.  On August 2, 2005, the Board denied Enzo's Motion for Benefit ("the

Decision") because (1) Enzo did not sufficiently meet the requirements of § 1.137(b)(3); and (2)

meeting the requirements of an *ex parte* rule, such as § 1.137(b), "may not be sufficient to

establish a moving party's entitlement to the relief sought" in an *inter partes* proceeding, such as

an interference.  Compl. Ex. 16 at 6 (hereinafter cited as "Decision").  The Board issued its

Decision without advancing the Petition to Revive to the party that Enzo alleges is the

appropriate entity within the PTO responsible for resolving such petitions: the Office of the

Deputy Commissioner for Patent Examination Policy ("Deputy Commissioner").

Wounded but not dead, Enzo submitted two more filings to the Board on August 16,

2005: (1) "Request for Rehearing Under § 41.125(c)"[9] ("Request for Rehearing"), requesting a

rehearing of the Board's Decision of August 2, 2005, and (2) "Petition Under 37 C.F.R. § 41.3

"[10] ("Petition to CAJ"), requesting that the Chief Administrative Judge instruct the Board to (a)

---

interested party, subject to such other requirements as may be imposed.  Any petition
under this section must be accompanied by the petition fee set forth in § 1.17(f).

37 C.F.R. § 1.183 (2006).

[9] Section 41.125(c) of Title 37 of the Code of Federal Regulations provides that "[a]
request for rehearing of a decision on a motion must be filed within fourteen days of the
decision."

[10] Section 41.3 of Title 37 of the Code of Federal Regulations, in relevant part, provides
as follows:

(a)     Deciding official.  Petitions must be addressed to the Chief Administrative
        Judge.  A panel or an administrative patent judge may certify a question of

withdraw the Decision of August 2, 2005; (b) expunge from the Interference record all of the Board's findings of fact and holdings relating to the merits of the Petition to Revive; and (c) submit the Petition to Revive and Petition for Waiver to the Deputy Commissioner for a proper disposition on the merits.  Both the Request for Rehearing and Petition to CAJ rested on Enzo's assertion that the Board lacked jurisdiction to decide a § 1.137(b) petition.  Authority to resolve such petitions, Enzo maintains, is vested in the Deputy Commissioner.  Enzo further argued that the disposition of the Motion for Benefit was premature because the Board did not first obtain the Deputy Commissioner's decision on the Petition to Revive.

On December 21, 2005, the Board denied Enzo's Motion for Rehearing (the "Rehearing Decision").  Notably, however, the Board altered its reasoning to arrive at its affirmation. Contrary to the Board's reasoning in its Decision of August 2, 2005, which exhaustively addressed the merits of Enzo's Petition to Revive, the Board explained that it "did not deny the petition to revive" and that its "reliance on 37 CFR § 1.137(b) was not necessary for our [D]ecision."  Pl.'s Mem. Supp. Mot. Summ. J. Ex. B at 7–8 (hereinafter cited as "Rehearing Decision").  The Board contended that it had only decided the Motion for Benefit—which related to priority and was therefore within the Board's jurisdiction—and not the Petition to Revive—which Enzo had filed only as an exhibit.

---

policy to the Chief Administrative Patent Judge for decision.  The Chief Administrative Patent Judge may delegate authority to decide petitions.

(b)  Scope.  This section covers petitions on matters pending before the Board (§§ 41.35, 41.64, 41.103, and 41.205); otherwise, see §§ 1.181 to 1.183 of this title.  The following matters are not subject to petition:
(1)  Issues committed by statute to a panel, and
(2)  In pending contested cases, procedural issues.  See § 41.121(a)(3) and § 41.125(c).

Moreover, the Board denied Enzo's plea for another opportunity to provide the Board

with the information necessary to meet the requirements of § 1.137(b)(3).  Of critical importance

to the disposition of this case is the Board's disregard for general due process and seemingly

thoughtless resignation to Enzo's forfeiture in denying this request.  Without explanation or

justification, the Board dismissively stated a dubious legal rule: "A party who fails to make out a

prima facie case in its motion is not entitled to a Mulligan."  Rehearing Decision at 15.

Finally, the Board dismissed Enzo's Petition to CAJ on the ground that such a petition

raised a question of priority that was committed to a panel by statute, and therefore was not

subject to petition under § 41.3(b)(1).  Id. at 17.  Likewise, the Board held that the question of

which PTO entity had jurisdiction to resolve a § 1.137(b) petition is "procedural," and therefore

not subject to petition under § 41.3(b)(2).  Id.  Finally, the Board held that the "decision on

jurisdiction may only be further reviewed pursuant to 35 U.S.C. §§ 141 and 146."[11]  Id. at 18.

Enzo ultimately filed this suit under 35 U.S.C. § 146.

### B.  Procedural Posture

Like a phoenix rising from its ashen throne of cinnamon twigs, Enzo filed a Complaint

---

[11] Remarkably, Enzo's nearly-lifeless corpse continued to excavate the labyrinthine bureaucratic battlefield of the PTO after December 21, 2005.  On January 1, 2006, Enzo filed a request for the Board to reconsider the dismissal of Enzo's Petition to CAJ, which the Board summarily rejected on January 12, 2006.  With its final breath, on April 12, 2006, Enzo filed a Petition Under 27 C.F.R. § 1.183 requesting that the Director instruct the Board to withdraw its Decision and order the Deputy Commissioner to first decide the ever-elusive Petition to Revive—relief identical to that sought in the Petition to CAJ.  Perhaps all-too-conscious of the likely outcome of that petition, on April 16, 2006, Enzo informed the Administrative Patent Judge that it would file a request for adverse judgment "solely on the basis of unpatentability" of its claims.  Two days thereafter, on April 18, 2006, Enzo filed a Request for Adverse Judgment Pursuant to 37 C.F.R. § 41.127(b), which the Board granted on May 2, 2006, effectively concluding the administrative proceedings for the Interference.

against Yeda and the Director of the PTO on July 3, 2006, pursuant to 35 U.S.C. § 146.  Yeda filed an Answer and Counterclaims on October 16, 2006.  On October 2, 2006, the Director filed a Motion to Dismiss Pursuant to Rule 12(b)(1) and/or to Dismiss Pursuant to Rule 12(b)(6).  On December 6, 2006, this Court granted the Director's motion to dismiss Counts I and II as to the Director and Counts III and IV in their entirety.  The effect of that Order was to narrow the instant litigation to the two viable claims (Counts I and II) relevant to the two necessary parties (Enzo and Yeda).

On December 26, 2006, Enzo filed a Motion for Protective Order, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, which Magistrate Judge Tommy E. Miller denied on February 1, 2007.  On February 5, 2007, pursuant to the Rule 16(b) Scheduling Order and in preparation for a Markman hearing scheduled for March 5, 2007, the parties submitted a Joint Statement Regarding Claim Construction.  A bench trial is set for July 10, 2007.

Enzo filed the instant Motion for Summary Judgment on January 18, 2007.  Yeda filed an opposition on January 29, 2006, and Enzo filed a rebuttal thereto on February 1, 2007.  A hearing for this matter occurred on February 14, 2007, from which this Opinion follows.

## II.   MOTION FOR SUMMARY JUDGMENT (RULE 56)

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted where "the pleadings, depositions [and] answers to interrogatories . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  "The purpose of summary process is to avoid a clearly unnecessary trial," Continental Can Co. v. Monsanto Co., 948 F.2d 1264, 1265 (Fed. Cir. 1991) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)), and "it is not designed to substitute

lawyers' advocacy for evidence, or affidavits for examination before the fact-finder, when there is a genuine issue for trial." Continental Can Co., 948 F.2d at 1265. "Summary judgment is as available in patent cases as in other areas of litigation." Id.

In ruling on a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party. United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). The moving party has the threshold burden of informing the court of the basis of the motion, of establishing that there is no genuine issue of material fact, and of showing that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Castillo v. Emergency Med. Assoc., 372 F.3d 643, 646 (4th Cir. 2004).

Once the moving party satisfies this threshold showing under Rule 56(c), the burden of production, not persuasion, shifts to the non-moving party. Celotex Corp. v. Catrett, 477 U.S. at 322–23. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. "The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. Thus, to defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that a genuine issue of material fact exists. See id. at 324.

## III.   SCOPE

The first issue before the Court concerns the scope of this litigation and motion for summary judgment. On this point, the parties disagree.

14

Enzo contends that "[t]he issue before the Court is a narrow one," and should be limited to the question of whether Enzo is entitled to the benefit of the '215 application—"the sole issued decided by the Board . . . in the underlying Interference."  Pl.'s Mem. Supp. Mot. Summ. J. at 1.  Only on the question of copendency does Enzo seek relief, on the basis that "the Board abused its discretion by exceeding its jurisdictional authority in effectively deciding a petition that it should not have decided, applying an arbitrary evidentiary standard, and ignoring the facts on the record which plainly prove Enzo's entitlement to the benefit of its earlier ['215] application."  Id.

The remedies sought by Enzo reflect its belief that the issue before the Court is a "narrow one."  First, Enzo asks that the Court dismiss or remand Yeda's counterclaims to the Board, as they "seek[] review of issues that were not reached or not even raised before the Board."  Id. at 25.  Alternatively, Enzo requests that the Court suspend these § 146 proceedings and grant Enzo leave to file a § 1.137(b) petition to revive directly with the Petitions Office (which Enzo claims it was not permitted to do upon the declaration of the Interference).  To the extent that Enzo only seeks the relief of appropriate process, granting such leave, Enzo contends, "would provide a definitive resolution while clearly avoiding the need for a trial."  Id. at 29.

By contrast, where Enzo finds simplicity, Yeda finds complexity, and maintains that resolution of this litigation encompasses more than a question of copendency or the Board's authority to decide a § 1.137(b) petition to revive:

> Despite Enzo's mischaracterization of the issue as a "narrow one," "benefit" [of a prior application] requires proof of at least three elements, i.e., (1) copendency, (2) written description, and (3) enablement.  Enzo fails to even address the issues of whether the '215 application contains an enabled written description of the invention. . . .  For that reason alone the motion should be denied.

15

Def.'s Opp'n Summ. J. at 1.  Thus, Yeda asks this Court to decide not only the sole issue

disputed by Enzo—copendency—but also the additional elements necessary to accord a patent

applicant the "benefit" of a prior application—written description and enablement—which the

Board did not even address or decide.  Moreover, Yeda has filed five counterclaims against Enzo

that it wishes the Court to resolve in this proceeding:

> (1) that Enzo's later applications are not entitled to the benefit of the filing date of
> the '215 application; (2) that Enzo's claims that correspond to the Counts are
> unpatentable to Enzo on prior art grounds (35 U.S.C. § 102 and/or § 103); (3) that
> Enzo's claims that correspond to the Counts are unpatentable to Enzo under 35
> U.S.C. § 112, first paragraph, for failure to meet the written description and
> enablement requirements of the statute; (4) that Yeda is entitled to the benefit of the
> filing date of its earliest-filed Israeli application IL-58765 filed on November 21,
> 1979; and (5) that Enzo's claims that correspond to the Counts are unpatentable to
> Enzo because Enzo forfeited any rights to those claims due to prosecution laches.

Def.'s Opp'n Summ. J. at 2–3; see also Answer & Countercl. ¶¶ 162–196.

Despite Yeda's decision to inflate the scope of this litigation to encompass issues never

resolved in the first instance by the PTO, it believes that it "has presented a tight package of

related issues designed to maximize judicial efficiency and avoid piecemeal litigation."  Def.'s

Opp'n Summ. J. at 28.  Yeda opposes dismissal of its counterclaims (though fails to address the

possibility of remand to the Board).  Likewise, Yeda opposes a stay to permit Enzo to file a new

petition to revive with the Petitions Office, because, "[i]n the unlikely event the 137 Petition to

revive is granted [following a stay], Enzo must still prove copendency, enablement, and written

description in this forum, and Yeda will still challenge all three."  Id. at 29.

The Court agrees with Enzo and finds that the present issue is a narrow one.  Both parties

recognize the Court's decision to "consider all questions of priority, as well as those that are

ancillary thereto, including the Petition to Revive, in reviewing the Board's interference

16

decision, as authorized by 35 U.S.C. § 146." Enzo Therapeutics, 2006 U.S. Dist. LEXIS 88497

at *43 (emphasis added).  The Court's purpose in stating as much, however, was not to permit

the parties to expand the § 146 litigation without bounds, but rather to inform the parties that

issues not decided (or allegedly not decided) by the Board, such as the Petition to Revive, may

be subject to review by this Court under § 146 so long as they relate to priority or are ancillary

thereto.  See Smith v. Carter Carburetor Corp., 130 F.2d 555, 557 (3d Cir. 1942).

In defining the precise scope of this proceeding and summary judgment, the decision of

Kochler v. Mustonen, 774 F. Supp. 641 (D.D.C. 1991), is instructive:

> This Court has jurisdiction over this claim pursuant to 35 U.S.C. § 146, which
> provides that a party who has exhausted administrative remedies before the Board
> may file a civil action in federal district court.  The Court's jurisdiction permits trial
> of a patent interference claim de novo, including the production of testimony and
> cross-examination not produced before the Board. . . . Nonetheless, the scope of the
> federal court's review is limited to the Board's decision. . . . [T]his Court lacks
> jurisdiction over any claim for relief on the merits of the underlying interference
> claim.  The only question before the Court is whether the Board abused its discretion
> in denying [the plaintiff's] motions.

Id. at 644 (emphasis added) (citations omitted).  Likewise, in Goliath Hundertzehnte

Vermoegensverwaltungs-Gessellschaft mbH v. Yeda Research and Development, Inc., No. 00-

1720, 2003 U.S. Dist. LEXIS 23349 (D.D.C. Oct. 6, 2003), the district court precluded

consideration of issues not decided by the Board at the interference proceeding, reasoning as

follows:

> According to the Federal Circuit, "the public interest in ensuring that only those
> patents that claim patentable subject matter are issued and maintained is best served
> when a district court considering review of a decision of the Board resolves all issues
> of priority and patentability that have been raised and fully developed."  By first
> allowing the Board to make factual and legal findings, the court can take advantage
> of the Board's specialized knowledge of the complex patent issues in dispute.
> Remanding to the Board any unaddressed issues in highly technical cases such as the
> case at bar "would be consistent with the modern scheme of administrative law in

which specialized agencies are responsible for initial decisions of complex factual and legal matters but are accountable on review to Article III judges."

Id. at *2–3 (citing Plumley v. Mockett, No. CV 98-6117, 1999 U.S. Dist. LEXIS 23308 at

*19–20 (C.D. Cal. June 4, 1999)).

In view of the law, the Board's comparative expertise in developing questions of

patentability and priority, and judicial economy, the Court finds that the only questions before it

concern the Board's substantive and procedural decisions relating to copendency and the revival

of the '215 application.  To the extent that any of the parties' claims relating to issues not yet

resolved by the Board remain after this proceeding, they will be remanded for further review by

the Board.  Accordingly, in this § 146 proceeding, the Court will not consider Yeda's assertion

that Enzo failed to satisfy the requirements of written documentation and enablement.  Likewise,

the Court will not consider Yeda's counterclaims, which will be remanded pursuant to this

Court's disposition.[12]

## IV.   ANALYSIS

Enzo alleges the "Board abused its discretion in denying [the] Motion for Benefit and

effectively denying the Petition to Revive" on three grounds: (1) procedural, (2) evidentiary, and

(3) substantive.

First, the Board lacked the authority to effectively decide the Petition to Revive. Second, even if the Board had the authority to decide the Petition to Revive, it erred by arbitrarily requiring Enzo to prove that the abandonment of the '215 application was unintentional when the law requires no such proof as a precondition for reviving an abandoned application. Third, the Board ignored the facts on the record . . . which conclusively prove that Enzo is entitled to the benefit of its earlier ['215] application.

[12] The Court expresses no opinion on the merits of Yeda's counterclaims, nor on whether such counterclaims are permissible in a § 146 appeal.

Pl.'s Mem. Supp. Mot. Summ. J. at 2.  These arguments will be examined in turn.

### A.      Procedural

Having narrowed the scope of this § 146 proceeding to those issues relating to the

Board's decision on copendency, the Court must address Enzo's claim that the Board lacked

authority to "effectively decide" the Petition to Revive filed pursuant to 37 C.F.R. § 1.137(b).

As a threshold determination, the Court must first decide whether the Petition to Revive was in

fact decided by the Board.  If so, the subsequent question is whether the Board had statutory and

regulatory authority to decide such a petition.

In light of the undisputed material facts contained in the record, the Court finds that the

Board decided the Petition to Revive, notwithstanding the Board's assertion that it only ruled

upon the Motion for Benefit.  However, the Court also finds that the Board possessed lawful

jurisdiction to decide such a petition.

### 1.      Did the Board "effectively decide" the Petition to Revive?

On July 1, 2005, Enzo filed the Motion for Benefit and Petition to Revive to convince the

Board its '215 application should be revived as unintentionally abandoned under § 1.137(b).

Both submissions were rooted exclusively in § 1.137(b), which permits a patent applicant to

petition for the revival on an abandoned application if the applicant files:

> (1)     The reply required to the outstanding Office action or notice, unless
>         previously filed;
> (2)     The petition fee as set forth in § 1.17(m);
> (3)     A statement that the entire delay in filing the required reply from the
>         due date for the reply until the filing of a grantable petition pursuant
>         to this paragraph was unintentional.   The Director may require
>         additional information where there is a question whether the delay
>         was unintentional; and
> (4)     Any terminal disclaimer (and fee as set forth in § 1.20(d)) required
>         pursuant to paragraph (d) of this section.

37 C.F.R. § 1.137(b).  Indeed, the pre-printed Form PTO/SB/64, styled "Petition for Revival of

an Application for Patent Abandoned Unintentionally Under 37 CFR 1.137(b)," contains a

mechanical checklist by which an applicant may claim to have met the § 1.137(b) requirements.

Enzo completed Form PTO/SB/64 in full.  However, rather than forward it to the

Petitions Office as directed by the pre-printed form, Enzo submitted it to the Board as an

attachment to the Motion for Benefit.  Thus, the Board received the Motion for Benefit as Enzo's

primary filing, while the Petition to Revive arrived as a mere attachment.  On the surface, it

would appear as though the Motion for Benefit was most important to Enzo's purpose of

reviving the '215 application.  But even a cursory reading of the submission reflects that, in

reality, the Motion for Benefit constituted a more detailed incarnation of the Petition to Revive.

In purpose, content, structure, and reasoning, the Motion for Benefit reflected, reiterated, and

relied upon the Petition to Revive.  As filed by Enzo, these two submissions were not distinct,

but were one in the same.  The difference, if any, was in the origination of their form: on one

hand, the Petition to Revive was devised by the PTO from the top-down, and made available to

patent applicants as a vanilla petition under § 1.137(b); on the other hand, the Motion for

Benefit, at least in this case, was devised by Enzo from the bottom-up, and was uniquely tailored

to address the circumstances and idiosyncracies of Enzo's specific case.  In other words, the

Motion for Benefit constituted a personalized Petition to Revive.  While the parties and Board

have consistently stated that the Petition to Revive accompanied and supplemented the Motion

for Benefit, a more correct view is that the Motion for Benefit accompanied and supplemented

the Petition to Revive, which controlled.

Although this interpretation of Enzo's submissions may alone be sufficient for the Court

to conclude that the Board "effectively decided" the Petition to Revive, the Board's own reasoning further suggests that the Board decided the § 1.137(b) Petition.  In its Decision of August 2, 2005, the Board exclusively relied upon the elements of § 1.137(b).  This comes as little surprise the Motion for Benefit was based wholly on the § 1.137(b) Petition to Revive. Naturally, to dispose of a motion rooted in § 1.137(b), the Board was necessarily required to discuss § 1.137(b) on the merits.  And this is precisely what the Board did, summarizing its decision as follows: "[Enzo] urges that it has met the requirements of 37 CFR § 1.137(b) concerning the revival of unintentionally abandoned applications.  We disagree."  Decision at 5. Specifically, the Board held that the statement by Enzo's lead counsel, Mr. Schulman, was inadequate to meet § 1.137(b)(3), and found "no basis on the record . . . to accord any weight to Mr. Schulman's statement."  Id.  Accordingly, this Court finds that the Board denied Enzo's Motion for Benefit on the grounds of § 1.137(b).

Following Enzo's Request for Rehearing, wherein Enzo first challenged the Board's authority to decide a § 1.137(b) petition, the Board quietly, but fundamentally, altered its basis for denying the Motion for Benefit.  In clear contrast to the language and reasoning in its Decision, the Board stated that "our reliance on 37 CFR § 1.137(b) was not necessary for our decision" and that it had only "referred" to § 1.137(b) to determine if Enzo was in compliance with an *ex parte* rule, as the Board alleges it is authorized to do under 37 C.F.R. § 41.121(c)(2). Rehearing Decision at 8.   In this equivocation, the Board proffered a true bureaucratic absurdity by stating that its decision to deny Enzo's Motion for Benefit on the basis of § 1.137(b) did not rely upon § 1.137(b).

The Board's new emphasis for denying the Motion for Benefit was placed on 35 U.S.C.

§ 41(a)(7).  Although this statute primarily specifies the fee for filing a § 1.137(b) petition, the

Board invoked it for the requirement that such a fee be paid for a petition based on

"unintentional" abandonment: "[Enzo] failed to provide sufficient evidence in the context of an

interference proceeding to prove that the '215 application went abandoned unintentionally, a

statutory requirement of § 41(a)(7)."  Rehearing Decision at 8 (emphasis added).  In disavowing

its reliance on § 1.137, the Board maintained that it "did not deny the [P]etition to [R]evive," but

only decided the Motion for Benefit, which the Board reasoned, "falls squarely within the

board's statutory jurisdiction."  Id. at 7–8.

The Court finds the Board's reasoning in the Rehearing Decision unpersuasive.  As the

Motion for Benefit wholly reflected the Petition to Revive, it must be concluded that upon

deciding the former, the Board also decided the latter.  Although § 41(a)(7) provides the proper

statutory authority for "unintentional" abandonment, it is evident that the Board ruled upon the

merits of the § 1.137(b) Petition to Revive.  In light of the foregoing facts and circumstances, the

Court finds that the Board decided the Petition to Revive.

## 2.       Did the Board lack jurisdiction to decide the Petition to Revive?

Enzo next alleges that the Board lacks jurisdiction to decide § 1.137(b) petitions.  In view

of the statutory and regulatory law, however, the Court finds that the Board does have

jurisdiction to decide § 1.137(b) petitions filed during interference proceedings.

Enzo's reasoning begins with 35 U.S.C. § 6(b), which expressly delineates the duties of

the Board of Patent Appeals and Interferences:

> The Board of Patent Appeals and Interferences shall, on written appeal of an
> applicant, review adverse decisions of examiners upon applications for patents and
> shall determine priority and patentability of invention in interferences declared under
> section 135(a).

35 U.S.C. § 6.  To the extent that § 6 does not expressly authorize the Board to decide petitions

to revive abandoned applications, Enzo contends that the Board exceeded its authority.

Enzo also relies upon prior case law suggesting that the Board may not decide § 1.137(b)

petitions.  In Pangborn Corp. v. American Foundry Equipment Co., 159 F.2d 88 (3d Cir. 1946),

the United States Court of Appeals for the Third Circuit stated as follows:

> Inasmuch as the matter of the revival of an abandoned application is for the sole
> determination of the Commissioner of Patents . . . and is not reviewable by the board
> of interference examiners or ordinarily by the Court, even though an appropriate
> motion had been timely filed, this matter must be left for *ex parte* consideration by
> the Commissioner after termination of the interference proceeding.

Id. at 100.  The Board dismissed the relevance of Pangborn because it was "decided in 1946 and

premised on statutes, rules, and practices long superceded."  Rehearing Decision at 9.

Despite Enzo's arguments, however, the regulatory scheme governing PTO procedures is

most instructive on the question of jurisdiction in § 1.137(b) petitions.  Petitions practice before

the Board is governed by 37 C.F.R. § 41.3, which provides the Board with authority to decide

"petitions on matters pending before the Board (§§ 41.35, 41.64, 41.103, and 41.205)."  37

C.F.R. § 41.3(b).  Although §§ 41.35, 41.64, and 41.205 have no application to this case,

§ 41.103 does.  It provides as follows:

> The Board acquires jurisdiction over any involved file when the Board initiates a
> contested case.  Other proceedings for the involved file within the Office are
> suspended except as the Board may order.

37 C.F.R. § 41.103.  A "contested case" is any "Board proceeding other than an appeal under 35

U.S.C. § 134 or a petition under § 41.3."  37 C.F.R. § 41.2 (2006).  Thus, an interference under

35 U.S.C. § 135 constitutes a "contested case."  Consequently, § 41.103 applies and the Board,

upon declaring an interference, acquires jurisdiction over all petitions filed by the parties,

including § 1.137(b) petitions.  Accordingly, the Board was authorized at law to decide Enzo's Petition to Revive.

Finally, in addition to § 41.103 and § 41.3 bestowing jurisdiction on the Board to decide a § 1.137 petition during an interference proceeding,§ 41.125 offers general guidance on the Board's authority to decide "motions," stating as follows:

> The Board may take up motions for decisions in any order, may grant, deny, or dismiss any motion, and may take such other action appropriate to secure the just, speedy, and inexpensive determination of the proceeding.

37 C.F.R. § 41.125(a).  Although the issue before the Court concerns a "petition" under § 1.137(b), § 41.125, concerning "motions," provides general support for the Board's broad authority to resolve matters arising during an interference.

In conclusion, the Court finds that the Board has authority to decide§ 1.137 petitions filed during interference proceedings.  An interference filed under 35 U.S.C. § 135 meets the criteria of a "contested case" under 37 C.F.R. § 41.2.  All "contested cases" fall within the scope of 37 C.F.R. § 41.103.  All petitions filed in proceedings governed by § 41.103 are subject to § 41.3(b), which in turn vests authority in the Board to decide § 1.137(b) petitions.

### B.    Evidentiary

#### 1.    Heightened Burden of Proof

Enzo next contends that "even if the Board had the authority to decide the Petition to Revive, it erred by arbitrarily requiring Enzo to prove that the abandonment of the '215 application was unintentional when the law requires no such proof as a precondition for reviving an abandoned application."  Pl.'s Mem. Supp. Mot. Summ. J. at 2.  At its essence, this argument challenges the evidentiary standard used by the Board in rejecting Enzo's statement intended to

24

satisfy § 1.137(b)(3).  The Court disagrees.  In light of the applicable legal and regulatory authority, the Court finds that the Board did not abuse its discretion in considering § 1.137(b)(3).

As noted, an essential element of any § 1.137(b) petition to revive is a "statement that the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to this paragraph was unintentional."  37 C.F.R. § 1.137(b).  Enzo alleges that it satisfied this requirement by submitting to the Board a completed Petition to Revive (Form PTO/SB/64) containing the following pre-printed statement:

> The entire delay in filing the required reply from the due date for the required reply until the filing of a grantable petition under 37 CFR 1.137(b) was unintentional.

Compl. Ex. 10 ¶ 4.  Enzo's lead counsel, Mr. Schulman, executed this statement.

These words without more, however, may fail to satisfy § 1.137(b)(3).  Section 1.137(b)(3) itself explicitly states that "[t]he Director may require additional information where there is a question whether the delay was unintentional."  37 C.F.R. § 1.137(b)(3).  Likewise, the "statement of unintentional delay" printed on Form PTO/SB/64 also states that "[t]he United States Patent and Trademark Office <u>may require additional information if there is a question as to whether either the abandonment or the delay in filing a petition under 37 CFR 1.137(b) was unintentional.</u>"  Compl. Ex. 10 ¶ 4 (emphasis added).  As the plain language of § 1.137(b)(3) indicates, the PTO may require a patent applicant to do more than simply "state" that its abandonment resulted from unintentional delay.

The regulatory guidelines governing PTO procedure further support the notion that the Director need not accept or rubber-stamp an applicant's § 1.137(b)(3) statement of unintentional delay.  Section 711.03(c)(II)(C) of the M.P.E.P. addresses this very issue:

> <u>While  the  Office  reserves  the  authority  to  require  further  information</u>

concerning the cause of abandonment and delay in filing a petition to revive, the Office relies upon the applicant's duty of candor and good faith and accepts the statement that 'the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to 37 CFR 1.137(b) was unintentional' without requiring further information in the vast majority of petitions under 37 CFR 1.137(b). This is because the applicant is obligated under 37 CFR 10.18 to inquire into the underlying facts and circumstances when a practitioner provides this statement to the Office.

Even if the Office requires further information in a petition under 37 CFR 1.137(b), such petition is still significantly less burdensome to prepare and prosecute than a petition under 37 CFR 1.137(a). The Office is almost always satisfied as to whether 'the entire delay . . . was unintentional' on the basis of statement(s) by the applicant or representative explaining the cause of the delay (accompanied at most by copies of correspondence relevant to the period of delay).

M.P.E.P. § 711(c)(II)(C) (emphasis added). This language evidences the PTO's right to require more than the applicant's mere "statement" of unintentional delay. Moreover, the M.P.E.P. indicates that the § 1.137(b)(3) "statement" is not itself mandatory, but rather permissive and only recommended to expedite the processing of the petition:

In order to expedite treatment, applicants filing a petition under 37 CFR 1.137(b) to revive an abandoned application are advised to include the statement "the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to 37 CFR 1.137(b) was unintentional," even if applicant chooses to include a statement of the facts concerning the delay.

Id. § 711(c)(II)(C)(1) (emphasis added). Finally, § 711.03(c)(II)(D) identifies precisely when the PTO may require an applicant to provide more evidence of unintentional delay in § 1.137(b) petitions:

The Office does not generally question whether there has been an intentional or otherwise impermissible delay in filing an initial petition pursuant to 37 CFR 1.137(a) or (b), when such petition is filed: (A) within 3 months of the date the applicant is first notified that the application is abandoned; and (2)[sic] within 1 year of the date of abandonment of the application. Thus, an applicant seeking revival of an abandoned application is advised to file a petition pursuant to 37 CFR 1.137 within 3 months of the first notification that the application is abandoned to avoid the question of intentional delay being raised by the Office (or by third parties seeking to challenge any patent issuing from the application).

26

Where a petition pursuant to 37 CFR 1.137(a) or (b) is not filed within 3 months of the date the applicant is first notified that the application is abandoned, the Office may consider there to be a question as to whether the delay was unavoidable or unintentional.  In such instances, . . .

    (B)    the Office may require further information as to the cause of the delay between the date the applicant was first notified that the application was abandoned and the date a 37 CFR 1.137(b) petition was filed, and how such delay was 'unintentional.'

To avoid delay in the consideration of the merits of a petition under 37 CFR 1.137(a) or (b) in instances in which such petition was not filed within 3 months of the date the applicant was first notified that the application was abandoned, applicants should include a showing as to how the delay between the date the applicant was first notified by the Office that the application was abandoned and the filing of a petition under 37 CFR 1.137 was . . . 'unintentional' in a petition under 37 CFR 1.137(b).

\*\*\*

Where a petition pursuant to 37 CFR 1.137(b) is not filed within 1 year of the date of abandonment of the application (note that abandonment takes place by operation of law, rather than by the mailing of a Notice of Abandonment), the Office may require:

    (A)    further information as to when the applicant (or the applicant's representative) first became aware of the abandonment of the application; and

    (B)    a showing as to how the delay in discovering the abandoned status of the application occurred despite the exercise of due care or diligence on the part of the applicant (or applicant's representative).

To avoid delay in the consideration of the merits of a petition under 37 CFR 1.137(b) in instances in which such petition was not filed within 1 year of the date of abandonment of the application, applicants should include:

    (A)    the date that the applicant first became aware of the abandonment of the application; and

    (B)    a showing as to how the delay in discovering the abandoned status of th application occurred despite the exercise of due care or diligence on the part of the applicant.

Id. § 711.03(c)(II)(D) (emphasis added).

These regulatory provisions articulate the PTO's right to demand evidence concerning the circumstances of unintentional delay beyond the applicant's "magic words."  Typically, as little as "copies of correspondence relevant to the period of delay" may suffice.  But if the applicant fails to file a § 1.137(b) petition within three months of notification or one year of abandonment, this evidentiary burden may be substantially higher.  An "applicant's failure to carry the burden of proof to establish that the 'entire' delay was . . . 'unintentional' may lead to the denial of a petition under . . . 37 CFR 1.137(b), regardless of the circumstances that originally resulted in the abandonment of the application."  Id. (emphasis added).

To the extent that the Board is authorized by § 41.3 to decide § 1.137(b) petitions, the Board may also determine the appropriate burden of proof to satisfy § 1.137(b)(3).  Thus, the Board was wholly within the bounds of its authority to find that the statement by Enzo's lead counsel was inadequate.  Although the Board failed to refer to the aforementioned M.P.E.P. and C.F.R. provisions granting it authority to apply a heightened evidentiary standard—likely because the Board was reluctant to admit that it had decided the Petition to Revive (which this Court has so found)—it was nevertheless authorized to do so.  Accordingly, the Board did not abuse its discretion by requiring Enzo to present additional evidence of unintentional delay under § 1.137(b)(3).

### 2.      Opportunity to File Additional Submissions

Although the Board operated within the boundaries of the law by heightening the standard of proof, the resolution of this Interference appeal ultimately turns on the propriety of the Board's decision to disallow Enzo from filing an amended Petition to Revive with additional

evidence on the issue of unintentional delay after Enzo initially failed to meet the Board's unexpectedly elevated evidentiary standard.  General principles of equity and due process demand that special emphasis be placed on Enzo's forfeiture resulting from the Board's evidentiary demands.  In view of the record, this Court finds that the Board inadequately considered Enzo's request to file amended evidence to support the § 1.137(b)(3) statement, and, consequently, did not accord Enzo fair due process to prove that the delay was "unintentional." The circumstances of this case warrant that Enzo receive a second bite at the apple.

Although the record provides relatively little on Enzo's request to correct the evidentiary shortcomings of the Petition to Revive, it is clear that the Board did not give due consideration to this request, and simply resigned itself to the forfeiture of Enzo's '215 application that was certain to result.  In its Motion for Rehearing, filed on August 16, 2005, Enzo invoked the principle of "due process" to justify an "opportunity to amend its Petition [to Revive]." Complaint Ex. 22 at 12–14.  The Board, disposing of this request, stated only that "[a] party who fails to make out a prima facie case in its motion is not entitled to a Mulligan. . . .  To allow a party to effectively start over unduly increases the costs, both time and monetary, to the Office and to the opponent."  Rehearing Decision at 15–16.

While this Court recognizes the merits of judicial speed and economy, it also recognizes that some litigants need not lose the tournament even if they shoot a bogey.  As an initial matter, forfeiture, or "the loss of a vested interest in consequence of a breach of duty," <u>Sun Lumber Co. v. Thompson Land & Coal Co.</u>, 76 S.E.2d 105, 110 (W. Va. 1953), is strongly discouraged:

> Equity looks with disfavor upon forfeitures and will not be quick, active, or alert to see, declare or enforce them.  Forfeitures still remain so obnoxious to judicial minds that slight circumstances are eagerly seized to avoid their enforcement when the substantial rights of parties insisting thereon can otherwise be adequately protected.

Michie's Jurisprudence, Penalties and Forfeitures, § 11 (2005).  Although this proposition

customarily arises in contract, it represents a general axiom of law.  In this case, the

forfeiture—Enzo's loss of interest in the '215 application—may be avoided by granting Enzo an

opportunity to amend the Petition to Revive.

   The law is replete with instances in which a party is entitled to leave to amend where

failure to provide such leave would work an unjustifiable forfeiture.  The authority of a court to

permit amendments exists independently of statute, and may be exercised whenever justice will

be promoted thereby.  See, e.g., Staats v. Georgia Home Ins. Co., 50 S.E. 815, 816 (W. Va.

1905).  For example, where a court finds that a party's pleadings are defective in a civil lawsuit,

leave to amend must be "freely given when justice so requires."  Fed. R. Civ. P. 15(a).

Moreover, if a bill of equity indicates that a plaintiff has a just cause of action, a court should not

dismiss the bill when a demurrer is sustained, but should grant leave to amend the bill. See, e.g.,

Baker v. Baker, 17 Va. (3 Munf.) 222 (1812); see also Michie's Jurisprudence, Amendments,

§ 12 (2005).  This same applies to granted motions to dismiss.  Id.  Leave to amend should be

denied principally when it appears that the original suit is without merit, id. § 25, or when the

amendment introduces new matters that materially change the nature of the suit.  Id. at § 26.

   Although the aforementioned law pertains foremost to pleadings, the same legal principle

applies to this action.  It is evident from the record that Enzo possesses a just claim, and it is

unclear whether Enzo's abandonment of the '215 application was intentional, a conclusion that

necessarily follows from the Board's decision.  A more reasonable interpretation of the evidence

suggests that such delay was unintentional.  As the parties mutually agreed at the hearing before

this Court on February 14, 2007, had Enzo filed the Petition to Revive in 1982, it is highly likely

30

that the PTO would have perfunctorily granted the Petition as a matter of course.  Although

considerable time elapsed before the § 1.137(b) petition was filed, Enzo is not wholly at fault.

The PTO played a critical role by failing to appropriately maintain its records to reflect that

Enzo's subsequent "continuation applications" did not in fact possess copendency with the '215

application as the PTO file wrappers and receipts indicated.  If such a conclusion comes as a

surprise to a neutral third-party observer, such as this Court, it may also come as a surprise to the

interested party, Enzo.

   The circumstances of this case do not warrant forfeiture of Enzo's application without

leave to amend.  The Court finds that the Board too hastily disposed of Enzo's request to amend

without full consideration of due process and the resulting forfeiture.  Of course, to the extent

that the Interference will allocate a single asset between two disputing parties, the Court

recognizes that "forfeiture" is inevitable for one of the applicants.  However, such a loss should

not result without requisite process and deliberation.  In this case, forfeiture may follow only

after the Board provides Enzo with an opportunity to amend the Petition to Revive and submit

additional evidence concerning the facts and circumstances of the allegedly "unintentional

delay" resulting in abandonment of the '215 application.  Principles of equity and due process

demand such an opportunity.  Accordingly, the Court **REMANDS** this matter back to the Board

so that Enzo may submit additional evidence on the question of unintentional abandonment

under § 1.137(b).

### C.    Substantive Merits

   The final issue before the Court concerns Enzo's claim that "the Board ignored the facts

on the record . . . which conclusively prove that Enzo is entitled to the benefit of its earlier

31

application . . . ."  Pl.'s Mem. Supp. Mot. Summ. J. at 2.  To the extent that the record presents

questions of material fact that the parties have not had an opportunity to develop, it is

inappropriate to decide this issue on summary judgment.  Whether Enzo's Petition to Revive met

the requirements of § 1.137(b) depends on findings of fact to be determined upon further

development of the disputed facts now in the record.  Accordingly, the Court will not grant

Enzo's motion for summary judgment on this ground.

Moreover, as the Court has remanded this case to Board for a reconsideration of the

copendency issue on new evidence offered by Enzo, resolution of this case on the merits by this

Court is unnecessary.  Following remand, the Board may continue the Interference proceeding as

necessary consistent with this Opinion.

The Clerk of the Court is **DIRECTED** to forward copies of this Memorandum Opinion

and Order to counsel of record for all parties and the Board of Patent Appeals and Interferences.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
UNITED STATES DISTRICT JUDGE

February 28, 2007
Norfolk, Virginia

32